UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


THOMAS E. HARRISON, JR.;
and NORMA HARRISON,

          Plaintiffs

v.                                    Civil Action No. 2:07-00696

UNITED STATES OF AMERICA; RELY
C. CARBONEL, M.D.; LOGAN GENERAL
HOSPITAL, LLC, a West Virginia
limited liability company and
doing business as Logan Regional
Medical Center; and CHANCHAI
TIVITMAHAISOON, M.D.,

          Defendants[1]


          <u>MEMORANDUM OPINION AND ORDER</u>


          Pending are a motion for summary judgment and a motion

for partial summary judgment, each filed by the United States of

America on November 14, 2008.



                         I. Background



          This action arises from alleged medical malpractice.

_____

          [1] Dr. Rely C. Carbonel was dismissed from this action on
December 31, 2008, and the parties have represented to the court
that they expect to present the court with a proposed order
dismissing the Logan General Hospital, LLC, d/b/a Logan Regional
Medical Center and Dr. Tivitmahaisoon shortly.

On February 25, 2005, the plaintiff Thomas E. Harrison, Jr., was seen by Stephen Beckett, D.D.S., a dentist employed by the Community Health Foundation of Man, West Virginia ("Community Health").  (Beckett Decl. ¶ 2).  Community Health is a federally funded program under the United States Department of Health and Human Services and an employee of the United States for the purposes of the Federal Tort Claims Act.  (Mem. Opinion & Order, entered June 10, 2008, at 2).  Accordingly, Harrison is suing the United States for the conduct of Dr. Beckett.

When Harrison presented in Dr. Beckett's office on February 25, 2005, he suffered from pain and swelling around tooth #17, which is in the lower left quadrant of the mouth. (Beckett Decl. ¶ 2).  Dr. Beckett performed a dental x-ray, which showed no indication of large decay and no periapical abnormalities, although tooth #17 did show a small cavity. (Id.).  The cavity was neither big nor deep.  (Id.).  The tooth was fully erupted, vital, and not impacted.  (Id.).  Harrison informed Dr. Beckett that the tooth was not sore to palpation or sensitive to cold.  (Id.).  Dr. Beckett determined that the swelling and pain was of gingival origin caused by periodontal pockets.  (Id.).  He scaled the periodontal pockets and prescribed Pen VK 500 mg q.i.d. (Penicillin, an antibiotic for

2

the infection) and Lortab 5 mg (#15) q.6h. (for the pain).
(Id.).  Harrison was given an appointment to return on March 3,
2005, to check on his progress, and Dr. Beckett told Harrison
that if his condition worsened, he could call the office and Dr.
Beckett would see him sooner.  (Id.).  Dr. Beckett states in his
declaration that it is his habit and routine to inform patients
that they can see him in between appointments if they have
problems or need immediate help.  (Id.).

        Harrison returned to see Dr. Beckett on March 3, 2005,
for a reevaluation as scheduled.  (Id. at ¶ 3).  Upon examining
Harrison's mouth, Dr. Beckett found that the swelling in the
lower left quadrant "was now down and had resolved," and Harrison
no longer complained of any pain in that area.  (Id.).  At the
conclusion of the March 3, 2005 appointment, Harrison was
scheduled for two appointments, the first on April 1, 2005, for a
cleaning, and the second on May 31, 2005, to have the cavity in
tooth  filled.  (Id.).

        On April 1, 2005, Harrison returned to Community Health
for his cleaning.  (Id. at ¶ 4).  The dental hygienist performed
a debridement of the mandibular area.  (Id.).  She noted that
Harrison had Class III calculus (moderate to heavy calculus) on
his teeth, and he had a Class I furcation between tooth #19 and

3

tooth #30.  (Id.).  She also noted that he had AAP III class
periodontal disease with moderate to severe bone loss and
generalized gingival recession.  (Id.).  These findings revealed
the presence of significant periodontal disease.  (Id.).
Harrison was advised of his periodontal status, which included
the recommendation that he see a periodontist.  (Id.).  Harrison
declined to do so and stated that he did not want Community
Health to recommend or schedule him to see a periodontist for his
periodontal disease.  (Id.).  Harrison was also advised of the
need for regular cleanings, and the dental hygienist scheduled
him for another visit for further scaling of the maxillary area
due to the heavy build-up and noted that anesthesia might be
needed at that time because of the heavy level of calculus and
periodontal disease in that area.  (Id.).

Dr. Beckett also examined Harrison during his April 1,
2005, cleaning appointment.  (Id.).  He states in his declaration
that:

> There was no evidence of gingival infection or pain on
> April 1, 2005.  If evidence of gingival infection had
> been present (such as swelling, pus, inflammation,
> etc.), it would have been written in the office note by
> either the dental hygienist or myself.  In addition, if
> Mr. Harrison had complained of pain, it would have been
> written in the office note by myself or the dental
> hygienist.  Further, if Mr. Harrison had pain at Tooth
> #17 on that visit or swelling in that area on April 1,
> 2005, then the dental hygienist would have been unable

4

to clean and scale that area.
(<u>Id.</u>).

Harrison was scheduled to return to see the dental
hygienist on May 10, 2005, but he cancelled the appointment.
(<u>Id.</u> at ¶ 5).  The appointment book indicates that Harrison was
going to reschedule the appointment, but he never returned to see
the dental hygienist for further scaling or cleaning.  (<u>Id.</u>).

Harrison returned to see Dr. Beckett on May 31, 2005,
for his scheduled appointment to have the cavity in tooth #17
filled.  (<u>Id.</u> at ¶ 6).  Upon examination of Harrison's mouth, Dr.
Beckett found no signs of swelling, infection (such as pus,
swelling, or inflammation), or any other problems aside from his
pre-existing periodontal disease.  (<u>Id.</u>).  He noted that tooth
#17 was vital and alive, and he intended to preserve the tooth
and prevent further decay by filling the existing decayed area.
(<u>Id.</u>).  Harrison did not have any complaints of pain in his mouth
prior to the commencement of the procedures for filling the
tooth.  (<u>Id.</u>).  Dr. Beckett noted that the area of decay was
small, and he performed a surface filling, which he completed
without any problems or complications.  (<u>Id.</u>).  The level of
anesthetic used for the filling procedure was normal, and
Harrison did not complain of any pain prior to, during, or

5

immediately after the procedure.  (Id.).  At the conclusion of
the May 31, 2005 appointment, Harrison was scheduled for a June
21, 2005 follow-up appointment.  (Id.).

On June 1, 2005, the day after Dr. Beckett performed
the filling procedure, Harrison called Community Health and spoke
to the receptionist, who conveyed a message to Dr. Beckett that
Harrison believed that he was having swelling around tooth #17,
the tooth that had been filled.  (Id. at ¶ 7).  Dr. Beckett
prescribed Pen VK 500 mg (#40) (Penicillin) and Lortab 5 mg (#15)
for his complaints of swelling and pain.  (Id.).  He states in
his deposition that he had assumed that the problem Harrison had
been having on February 25, 2005, had recurred.  (Beckett Dep.
37-38).  When asked whether it was possible for such an infection
to develop in one day, he stated that it was possible.  (Id.).
Harrison never called Dr. Beckett again, nor did he return to Dr.
Beckett for treatment or care.  (Beckett Decl. ¶ 7).

On June 4, 2005, Harrison presented to Logan Regional
Medical Center, where he was evaluated in the emergency room by
Rely C. Carbonel, M.D., a family/general practitioner, who
admitted Harrison under his care.  (Am. Compl. ¶ 37).  Dr.
Carbonel determined that Harrison had a fever, leukocytosis
(elevated white blood cell count), and swelling.  (Carbonel dep.

6

19).  Harrison also had difficulty speaking and opening his
mouth.  (Am. Compl. ¶ 37).  Dr. Carbonel's initial impression was
that Harrison had an infected thyroglossal cyst duct.  (Carbonel
dep. 18).  He placed Harrison on antibiotics and arranged for a
surgeon, Chanchai Tivitmahaisoon, M.D., to see Harrison.  (Id. at
20, 22).

        Over the next few days, Harrison showed improvement
with his temperature and white blood cell count declining.  (Id.
at 36-37).  He also had less difficulty opening his mouth.
(Id.).  He was discharged by Dr. Carbonel on June 7, 2005, with
instructions to follow up with Dr. Carbonel in two weeks and with
a dentist in ten days.  (Id. at 60; Am. Compl. ¶ 39).  According
to Dr. Carbonel, no records exist to show that Harrison filled
his prescription for antibiotics.  (Mem. Supp. Carbonel's Mot.
for Partial Summary Judgment 2).

        Harrison was readmitted to Logan Regional Medical
Center on June 20, 2005, with a diagnosis of submandibular
abscess.  (Am. Compl. ¶ 40).  He was again cared for by Dr.
Carbonel.  (Carbonel dep. 65).  During this admission, Dr.
Carbonel ordered a CT scan and again consulted a surgeon.  (Id.
at 67).  Thereafter, Harrison was transferred to the Charleston
Area Medical Center ("CAMC") on June 22, 2005.  (Am. Compl. 40-

7

41).

Harrison was admitted to CAMC with a diagnosis of Ludwig's angina (a bacterial infection of the floor of the mouth involving swelling which may block the airway), airway compromise, hypertension, and coronary artery disease.  (Id. at ¶ 41).  He underwent surgical drainage and extraction of tooth #17 and tooth #18 and was intubated in the intensive care unit. (Id.).  He also met with Srinivasan Narasimhan, M.D., a cardiologist, because of a nonspecific T-wave inversion seen on an electrocardiogram.  (Narasimhan dep. 7).  His fever responded to the drainage and extraction, and he was discharged on June 28, 2005, with prescriptions for Norvasc, Lopressor, Cleocin Flagyl, Peridex, and Lortab.  (Am. Compl. ¶ 41).  Following Harrison's discharge from CAMC, Dr. Narasimhan continued to follow Harrison until October of 2007, when it was determined that Harrison did not have active or established heart disease.  (Narasimhan dep. 18).

Harrison, along with his wife, Norma Harrison, filed this action in federal court on November 1, 2007.  In the three-count complaint he alleges as follows.  Count I states a claim of medical negligence against the United States for the actions of Dr. Beckett at Community Health.  (Am. Compl. ¶¶ 42-49).  In

8

Count III, Norma Harrison claims loss of consortium.  (<u>Id.</u> at ¶¶
59-60).  The court disregards Count II wherein Harrison alleges
medical negligence by the now-dismissed Dr. Carbonel and the soon
to be dismissed Dr. Tivitmahaisoon and the Logan Regional Medical
Center.  (<u>Id.</u> at ¶¶ 50-58).

II. Governing Standard

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those
necessary to establish the elements of a party's cause of action.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  <u>Id.</u>  The
moving party has the burden of showing -- "that is, pointing out
to the district court -- that there is an absence of evidence to
support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>,

9

477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France

10

v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are

"drawn from the underlying facts . . . must be viewed in the

light most favorable to the party opposing the motion."  United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962).


### III. The Motion for Partial Summary Judgment of the United States Concerning Alleged Cardiac Injury

The United States believes that the plaintiffs may

assert a claim that Harrison experienced a cardiac injury as a

result of the oral submandibular infection that he experienced

beginning on May 31, 2005, after Dr. Beckett filled tooth #17.

(USA's Mot. for Partial Summary Judgment ¶ 1).  The United States

seeks partial summary judgment on the ground that the plaintiffs

have failed to prove that the United States, through Dr. Beckett

and Community Health, proximately caused a cardiac injury to

Harrison.  (Id. at ¶ 2).  The plaintiffs filed no response to

this motion.

In support of the motion, the United States relies on

the testimony of Srinivasan Narasimhan, M.D., a cardiologist who

first saw Harrison at CAMC on June 26, 2005, while Harrison was

admitted.  (Narasimhan dep. 6).  Dr. Narasimhan testifies that he

was asked to see Harrison because of a nonspecific T-wave

inversion seen on an electrocardiogram.  (Id. at 7).  Dr. Narasimhan found the T-wave inversion to be nonspecific and nonsignificant.  (Id.).  Nonspecific T-wave inversions are seen frequently in patients and, according to Dr. Narasimhan are nothing of importance.  (Id. at 45).  Because Harrison had a strong family history of cardiac disease and had risk factors including cigarette smoking and an elevated lipid profile, an echocardiogram was ordered.  (Id. at 7-10, 14).  It revealed good left ventricular systolic function and normal cardiac function. (Id. at 11-12).

On August 9, 2005, Dr. Narasimhan followed-up with Harrison on an outpatient basis.  (Id. at 13).  Dr. Narasimhan advised Harrison to stop smoking cigarettes and marijuana because such habits could cause cardiac damage.  (Id. at 15).  A nuclear stress test was performed on August 19, 2005, which revealed good left ventricular function, no evidence of ischemia, and was considered a normal stress test.  (Id. at 15-16).  The test did not reveal any evidence of cardiac injury or any damage to Harrison's heart from his oral submandibular infection.  (Id. at 16-17).

Dr. Narasimhan saw Harrison on an outpatient basis again on March 2, 2006, June 7, 2007, and October 11, 2007.  (Id.

at 17-19).  None of his evaluations on these occasions revealed

any evidence of active cardiac disease, cardiac injury, or any

injury to his heart due to his oral submandibular infection.

(Id. at 17-21).  Dr. Narasimhan testifies that he found no

evidence of infection in Harrison's heart during any of the

studies he performed on Harrison, nor did he find any evidence of

cardiac impairment.  (Id. at 21-23).

       To state a claim for medical malpractice under the West

Virginia MPLA, West Virginia Code section 55-7B-3, a plaintiff

must prove that:

> (a) The health care provider failed to exercise that
> degree of care, skill and learning required or expected
> of a reasonable, prudent health care provider in the
> profession or class to which the health care provider
> belongs acting in the same or similar circumstances;
> and
>
> (b) Such failure was a proximate cause of the injury or
> death."

W. Va. Code § 55-7B-3.  Proximate cause is established when it

appears that the injury was the natural and probable consequence

of the negligent act and that it was reasonably foreseeable to a

prudent person in light of the attending circumstances.  Syllabus

Points 3 and 4, Matthews v. Cumberland & Allegheny Gas Co., 138

W. Va. 639, 77 S.E.2d 180 (1953).

       The United States contends that it is entitled to

13

summary judgment on the ground that the plaintiffs cannot establish that the United States proximately caused a cardiac injury to Harrison.  Dr. Narasimhan has expressly testified that he found no evidence that Harrison's oral submandibular infection caused him to experience any cardiac damage, injury, or impairment.  (Narasimhan dep. 23).  The nonspecific, nonsignificant T-wave inversion seen on an electrocardiogram is frequently in patients and, according to Dr. Narasimhan was nothing of importance.  (Id. at 7, 45).  The cardiac evaluations and tests performed by Dr. Narasimhan on Harrison's heart revealed normal cardiac function.  The echocarcardiogram and nuclear stress test both revealed no evidence that Harrison's heart had been infected, experienced any damage or impairment due to an infection, or had any evidence of cardiac disease.  (Id. at 11-12, 15-17).  The plaintiffs have offered no evidence to rebut the testimony of Dr. Narasimhan or create a question of material fact.  Inasmuch as Harrison suffered no cardiac injury caused by the oral submandibular infection, summary judgment is proper on this issue.

IV. The Motion for Summary Judgment of the United States
Concerning the Standard of Care Generally

The United States seeks summary judgment on the grounds

14

that the plaintiffs have offered no evidence to show that Dr.
Beckett deviated from the standard of care or that his conduct
proximately caused an injury to Harrison.  (USA's Mot. for
Summary Judgment ¶¶ 1-2).  Specifically, the United States
contends that the only expert testimony offered by the plaintiffs
on these elements fails to demonstrate either element because the
testimony rests upon a faulty assumption.  (Mem. Supp. USA's Mot.
for Summary Judgment 8-9).

        The plaintiffs rely on the testimony of Joel Berger,
D.D.S., M.D., an oral surgeon, to establish their claim against
the United States.  Dr. Berger testifies in his deposition that,
in his opinion, the care offered by Dr. Beckett on February 25,
2005, was appropriate.  (Berger dep. 101).  According to Dr.
Berger, Dr. Beckett's course of treatment deviated from the
standard of care beginning on March 3, 2005, when Harrison
presented for the follow-up appointment, at the conclusion of
which he was scheduled to return on April 1, 2005, for a
cleaning, and on May 31, 2005, to have the cavity in tooth #17
filled.  (Id. at 101-02).  Dr. Berger opined that Dr. Beckett
should have extracted tooth #17 or referred Harrison to an oral
surgeon because of the ongoing swelling around the tooth.  (Id.
at 102).  He also stated, however, that if the swelling had been

completely resolved on March 3, 2005, then the care provided by
Dr. Beckett would have been appropriate and would not have been a
deviation from the standard of care.  (Id. at 102-03, 130-131).
If the swelling had resolved, there would be no need for tooth
#17 to be extracted; rather, it would be the dentist's choice,
after discussing the preferred type of therapy with the patient,
whether to extract the tooth.  (Id. at 110).  Dr. Berger further
testified that he had no criticism of the care offered by Dr.
Beckett on May 31, 2005, or anytime thereafter.  (Id. at 106).

     The United States contends that Dr. Berger's opinion
that Dr. Beckett was negligent is faulty because it is based on
the false assumption that Harrison still had swelling around
tooth #17 on March 3, 2005.  (Mem. Supp. USA's Mot. for Summary
Judgment 10).  According to the United States, the record
evidence shows that the swelling around the tooth had completely
resolved by the time of Harrison's March 3, 2005 appointment.
(Id.).

     In support of its assertion that the swelling was
resolved by March 3, 2005, the United States notes that Dr.
Beckett's office note for the March 3 appointment states that the
"swelling was down."  (Beckett decl. ¶ 3).  Dr. Beckett states in
his declaration that the note that the "swelling was down" meant

16

that the swelling had resolved.  (<u>Id.</u>).  He explains:

> My office note for March 3, 2005, uses the term
> 'swelling down' to describe the change in the condition
> of Mr. Harrison's lower left quadrant of his mouth on
> March 3, 2005.  That description meant that the area
> was no longer swollen.  If the area had remained
> swollen, I would have so indicated in my office note by
> stating that swelling was still present but reduced.
> Mr. Harrison no longer complained of pain in that area
> on March 3, 2005.  Again, if Mr. Harrison had indicated
> that he was still having pain in that area, I would
> have so noted on my office note of March 3, 2005.

(<u>Id.</u>).  Additionally, Dr. Beckett testified in his deposition

that he recalls that on March 3, 2005, he examined tooth #17 and

determined that there was no infection present.  (Beckett dep.

31-32).  He determined this by noting that there was no exudate

(pus), no swelling around the tooth, the tooth was not sore to

palpation, and Harrison had no complaints.  (<u>Id.</u> at 32).

        Additionally, the United States relies on the

statements and deposition testimony of the plaintiffs themselves

to support the assertion that there was no swelling around tooth

#17 on March 3, 2005.  Dr. Berger, in rendering his opinion, did

not review the deposition testimony of either of the plaintiffs.

(Berger dep. 114).  Norma Harrison testified in her deposition

that there was no swelling in her husband's mouth until after the

tooth was filled on May 31, 2005.  (N. Harrison dep. 65-66).  Dr.

Tivitmahaisoon testified in his deposition that when he consulted

with Harrison on June 4, 2005, Harrison stated that the swelling occurred after the filling procedure was performed. (Tivitmahaisoon dep. 70-71).

The court observes that Dr. Berger's opinion is based entirely on his interpretation of Dr. Beckett's note "swelling down" to mean that the swelling was down but not resolved -- a matter of semantics lacking support from the medical evidence or from individuals with personal knowledge.  In contrast, Dr. Beckett has testified from his personal knowledge that he recalls that the swelling was resolved and that when he made his note "swelling down" he meant that it was resolved.  Dr. Beckett's interpretation of his note is supported by evidence relating to Harrison's subsequent visits to Community Health.  Dr. Beckett stated in his declaration that the dental hygienist would not have been able to clean and scale Harrison's teeth on April 1, 2005, if there was pain or swelling around tooth #17 on that day. Additionally, Jeffery D. Hartzog, D.M.D., the United States' expert, has stated in his expert report that if Harrison had pain and swelling around tooth #17 on May 31, 2005, Dr. Beckett would not have been able to fill the tooth because the local anesthetic used to numb the area would have been ineffective due to the presence of infection.  As Dr. Berger explained in his

18

deposition, inflammatory byproducts from the infection lower the pH level around the tooth, making local anesthetic ineffective. Harrison reported to the hospital on June 4, 2005, approximately three months after the March 3, 2005, appointment, and just a few days after the tooth was filled on May 31, 2005.

Federal Rule of Evidence 702 requires, among other things, that an expert witness's testimony be "based on sufficient facts or data" and that the expert have "applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."  Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994); Sparks v. Gilley Trucking Co., 992 F.2d 50, 54 (4th Cir. 1993) ("a court may refuse to allow a generally qualified expert to testify if his factual assumptions are not supported by the evidence.") (citing Eastern Auto Distrib., Inc. v. Peugeot Motors of Am., Inc., 795 F.2d 392, 337-38 (4th Cir. 1986) (holding that the district court did not abuse its discretion when it excluded the testimony of an expert witness whose opinion was based on two assumptions that were speculative and not supported by the record)).  Such an opinion offers no assistance to the trier of fact in understanding the

19

evidence because it lacks an adequate foundation in the evidence of the case.

The United States seeks to have the testimony of Dr. Berger excluded because his opinion is based upon an assumption that is not supported by the record.  The plaintiffs respond that there is a question of material fact concerning whether or not tooth #17 evidenced infection on March 3, 2005, but the plaintiffs identify no evidence to show that a question of material fact exists.  They point to the deposition testimony of Dr. Berger, claiming that he "qualified his testimony by stating that based on his review of the records, Thomas Harrison's swelling was 'down, but not resolved." (Pls.' Response to USA's Mot. for Summary Judgment 5).  This is precisely the assumption that the United States is challenging.  Neither the plaintiffs nor Dr. Berger in his deposition identify any records showing that the swelling was not resolved.

Additionally, the plaintiffs challenge the testimony of Dr. Beckett as unreliable.  They note that he "claims to 'remember' Thomas Harrison, and to hav[e] independent recollection of his treatment of him," despite the circumstances that Dr. Beckett treated upwards of twenty patients each day for years before this action was filed.  (Id.).  The court finds

these arguments unpersuasive.  The summary judgment phase is not the appropriate time for the court to be making determinations of credibility.  Sosebee, 797 F.2d at 182.

The court discerns no evidence in the record indicating that Harrison had swelling in his mouth around tooth #17, or any other evidence of infection, during his March 3, 2005, appointment.  To the contrary, the evidence supplied to the court suggests that there was no indication of infection on that day. Absent any such evidence, Dr. Berger's opinion that Dr. Beckett deviated from the standard of care by failing to extract the tooth or refer Harrison to an oral surgeon is of no help to the trier of fact in understanding the evidence of the case because it is based upon an assumption that is not supported by the evidence.

Aside from Dr. Berger's testimony, which the court finds to be unhelpful to the trier of fact, the plaintiffs have offered no evidence to prove either of the two statutory elements of a medical malpractice claim under the West Virginia MPLA against the United States based upon the care provided by Dr. Beckett.  The United States moves for summary judgment based upon this absence of evidence.  The plaintiffs respond that summary judgment would be premature at this stage in the litigation.  In

21

support of this contention, the plaintiffs rely on the opinion of

this court in <u>Lutz v. Estate of Hillier</u>, 574 F. Supp. 1032 (S.D.

W. Va.) (Haden, J.), wherein the court declined to grant summary

judgment for the defendant even though the plaintiffs had no

expert medical witness who was competent to testify to the

standard of care.   <u>Lutz</u>, 574 F. Supp. at 1034.   The court so

held, stating:

> [T]he Court is of the opinion that it would be improper
> to enter summary judgment in favor of the Defendant at
> this stage of the litigation.  Plaintiffs may be able
> to establish the requisite elements of their cause of
> action by examination of Defendant's experts as adverse
> witnesses and by introducing into evidence the
> deposition testimony of those experts, including that
> of Dr. Hillier [the defendant doctor].  Whether
> Plaintiffs can succeed in eliciting the necessary
> medical standard at trial from these witnesses cannot
> be prejudged on a motion for summary judgment.

<u>Id.</u>  The plaintiffs state in their response:

> Thomas Harrison does <u>Lutz</u> one better: he has identified
> a competent expert prepared to testify to the standard
> of care applicable to the identification, recognition,
> diagnosis, and treatment of Mr. Harrison's infection.
> Granted, the plaintiffs did not take the deposition
> testimony of the defendants' experts in this case, but
> where the plaintiffs in <u>Lutz</u> were without an expert,
> the plaintiffs here are merely without the discovery
> deposition[s] of adverse experts.  In applying the
> holding and theory of <u>Lutz</u> to this case, the standard
> of care applicable to this case may be established by
> the testimony of plaintiffs' expert witness, Dr. Joel
> Berger, M.D., D.D.S., or through the adverse testimony
> of the United State's expert.

(Pls.' Response to USA's Mot. for Summary Judgment 9).

As the United States aptly notes in its reply, <u>Lutz</u> was decided before the United States Supreme Court decided <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), and <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), wherein the Supreme Court rejected the proposition that summary judgment could be denied as being premature when the nonmoving party has had an adequate opportunity to conduct discovery to oppose a motion for summary judgment and, yet, opposes the motion by alleging only facts that they believe they will be able to elicit at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322 ("the nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the Court's attention to <u>supporting evidence already in the record</u> that was overlooked or ignored by the moving party.") (emphasis added); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256 ("the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.").

Inasmuch as the plaintiffs have failed to offer any evidence to show that Dr. Beckett deviated from the standard of

care and that his conduct proximately caused Harrison injury, as required by the West Virginia MPLA, the United States is entitled to summary judgment.

### V. Conclusion

Based upon the foregoing, it is ORDERED that the motion for partial summary judgment of the United States be, and it hereby is, granted.  It is further ORDERED that the motion for summary judgment of the United States be, and it hereby is, granted.  Accordingly, it is also ORDERED that the plaintiffs' claims against the United States be, and they hereby are, dismissed.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  January 6, 2009

John T. Copenhaver, Jr.
United States District Judge

24